UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 15-40023-TSH |
| | ) | |
| DAVID L. MARICOLA, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT SENTENCING MEMORANDUM

Over a period of approximately eighteen months, the defendant David Maricola ("Maricola") illegally exported and attempted to illegally export hundreds of assault rifle and firearm components, which were designated as defense articles on the United States Munitions List, to foreign persons located in more than twenty countries, including France, Finland, Indonesia, New Zealand, Thailand, Spain, and Australia in violation of the Arms Export Control Act, 22 U.S.C. §§ 2778(b)(2) and 2778(c), and the International Traffic in Arms Regulations, 22 C.F.R. §§ 121.1, 123.1, and 127.1(a). Pursuant to a plea agreement, the defendant pled guilty to the 32-count indictment detailing his conspiracy and scheme to illegally sell and export gun parts overseas. The United States submits this memorandum in support of its recommendation that the Court impose a sentence of: (1) imprisonment for a period of 57 months, (2) 36 months of supervised release, (3) a fine at the low end of the Guidelines sentencing range (unless the Court finds that the defendant is unable to pay such a fine), and (4) a mandatory special assessment of $3200. In the government's judgment this sentence is a reasonable and appropriate disposition of this case in that it is "sufficient, but not greater than necessary" to comply with the purposes of the Sentencing Reform Act. *See* 18 U.S.C. § 3553(a).

There will be one disputed issue at the sentencing hearing – the defendant refuses to take

full responsibility for the reasonably foreseeable consequences of his conduct. The defendant claims that he could not have foreseen that firearm parts he was illegally selling and exporting overseas in violation of numerous laws and regulations would be used to engage in criminal activities, including shootings. Such a claim defies logic. The defendant's conspiracy and unlawful activities involved potentially lethal and inherently dangerous goods that have a single purpose – to enable a person to expel or shoot bullets or ammunition through a metal tube using explosive force. Firearms are not designed for any other purpose. Maricola now attempts to feign surprise at the fact that gun parts he shipped illegally to a unlicensed end-user were used in shootings. Accordingly, this Court should reject Maricola's argument and find that the use of the firearm parts Maricola exported to Finland in gang shootings constitutes relevant conduct and was reasonably foreseeable under U.S.S.G. § 1B1.3.

## I. PLEA

On April 7, 2016, pursuant to a plea agreement, David L. Maricola ("Maricola"), pled guilty to a 32-count Indictment, which charged him with conspiring to illegal export defense articles (assault rifle and firearm components) from the United States (Count 1), illegally exporting and attempted to export defense articles (assault rifle and firearm components) from the United States to numerous foreign countries (Counts 2-20), making false statements on Customs Forms (Counts 21-27), and engaging in money laundering by causing money to be transferred from outside the United States to inside the United States for the purpose of engaging in unlawful exports of defense articles (Counts 28-32).

## II. LEGAL FRAMEWORK – THE ARMS EXPORT CONTROL ACT AND INTERNATIONAL TRAFFIC IN ARMS REGULATIONS

The export from, and import into, the United States of arms, munitions, weapons, equipment for military use and related components, and the technology to design, build and test

such items are strictly controlled and regulated under federal law. The Arms Export Control Act ("AECA"), 22 U.S.C. § 2778 et seq., authorizes the President of the United States to control the export and import of defense articles and defense services in furtherance of world peace, national security, and the foreign policy of the United States and to establish and maintain a United States Munitions List for that purpose. The President has delegated the authority to regulate the export and import of defense articles and defense services to the Secretary of State. Pursuant to that authority, the Department of State has promulgated the International Traffic in Arms Regulations, 22 C.F.R. Sections 120-130 ("ITAR").

The ITAR contains the United States Munitions List ("USML") and regulations governing exports and imports of defense articles and services. The USML is a list, divided into 21 categories, that identifies the types of items, services, and related technical data that are designated as defense articles and defense services under AECA. *See* 22 C.F.R. § 121.1. Items or services that are designated or controlled under any category of the USML "may not be exported … without a license" from the U.S. Department of State.

Category I of the USML is entitled "Firearms, Close Assault Weapons and Combat Shotguns." Included under this category of the USML are non-automatic, semi-automatic, and fully automatic firearms having a caliber of .50 (12.7 mm) or less, combat shotguns, weapons having a special military application ("Category I specified weapons"), and components, parts, accessories, and attachments for these weapons. *See* 22 C.F.R. § 121.1 (Categories I(a)-I(d) and Category I(h)). The following items which Maricola exported or attempted to export are designated as defense articles on the USML: (1) upper and lower receivers for AR-15 semi-automatic assault rifles; (2) upper and lower receivers for

M16 semi-automatic and fully automatic assault rifles; (3) gunstocks for AR-15 semi-automatic assault rifles; (4) barrels for AR-15 semi-automatic assault rifles; (5) barrels for M16 semi-automatic and fully automatic assault rifles; (6) gas tubes for AR-15 semi-automatic assault rifles; (7) flash suppressors for AR-15 semi-automatic assault rifles; (8) flash suppressors for M16 semi-automatic and fully automatic assault rifles; (9) barrels for UZI submachine guns; (10) upper receivers for M4 semi-automatic and fully automatic assault rifles; (11) bolt carrier groups and charging handles for M16 semi-automatic and fully automatic assault rifles; (12) barrels for Glock 9 mm and .40 and .45 caliber handguns (Glock Models 17, 19, 21, 23, 26, 27, 28, and 30); (13) pistol slides for Glock 9 mm and .40 and .45 caliber handguns (Glock Models 17, 19, 21, 23, 26, 27, 28, 30, and 36); (14) barrels for Beretta 9 mm handguns; (15) pistol slides for Beretta 9 mm handguns; and (16) barrels for .22 caliber handguns.  As a result, Maricola was required to obtain a license from the U.S. Department of State prior to exporting or attempting to export these items from the United States.  At no time did Maricola or any of his customers or conspirators, including Arto Laatikainen, apply for, or obtain a license from the Department of State to export any defense articles from the United States.

### III. OFFENSE CONDUCT AND RELEVANT FACTS

The government relies upon the facts contained in ¶¶ 1-39 of the PSR.  Highlighted below are the most salient facts that the Court should consider in imposing a fair and justice sentence:

- Over a period of eighteen months, Maricola conspired with Arto Laatikanien to export hundreds of assault rifle and firearm components (including lower receivers, gunstocks, and gas tubes for AR-15 assault rifles, upper receivers for AR-15 and M4 assault rifles, bolt carrier groups for M16 assault rifles, barrels and pistol slides for Glock 9mm and .45 caliber handguns, barrels and pistol slides for Beretta 9mm handguns, and barrels for UZI submachine guns) from the United States to Finland knowing that it was illegal to ship these items outside the United States without first obtaining an export license.

4

- Pursuant to Laatikanien's instructions, Maricola shipped the firearm parts Laatikanien had purchased to numerous people (*see* Count One, overt acts) in Finland. Maricola never inquired about the identity or status of Finnish persons to which he was sending the firearm parts. Nor did Maricola seek any information about how Laatikanien and his associates intended to use the firearm parts Maricola was supplying them.

- Laatikanien sold many of the firearm components he received from Maricola to numerous criminal organizations in Finland, including members of the Cannonballs Outlaw Motorcycle Gang. At least some of the components Maricola exported to Laatikanien were used to assemble entire weapons and sell them illegally. Additionally, according to information obtained from Finnish investigators, some of the firearm components Maricola exported to Laatikanien were used in two gang shootings in Finland that occurred on May 24, 2011 and on December 31, 2012.

- Laatikanien paid Maricola more than $100,000 for the firearm parts he illegally sold and exported to Finland.

- On numerous occasions between in or about 2010 and March 2012, Maricola falsely completed Customs Forms 2976 and 2976-A for international shipments, which Maricola then presented to postal clerks at the Southbridge Massachusetts Post Office. On these forms, Maricola falsely described the items he was shipping and undervalued the parts -- sometimes by hundreds of dollars. For instance, Maricola falsely identified parts he shipped to numerous countries, including Finland, France, Norway, New Zealand, Thailand, and Germany, as being "airsoft" parts rather than actual firearm components**.** (Airsoft guns are replica firearms that fire plastic pellets or bb's. They are designed to be non-lethal and are used almost exclusively for recreational purposes. Accordingly, airsoft guns and parts for such guns are excluded from the definition of defense articles on the USML.). Additionally, on several occasions, Maricola falsely identified lower receivers (frames) for AR-15 assault rifles as aluminum sculptures.

- Maricola repeatedly lied to postal clerks at the Southbridge Massachusetts Post Office. Between in or about 2011 and 2012, Maricola shipped numerous packages per week from the Southbridge Post Office. For every shipment, postal employees were required to ask about the contents of each package to ensure it did not contain any potentially hazardous or potentially dangerous items such as guns. In every interaction with the postal clerks about the contents of his packages, Maricola lied about what he was mailing. Maricola told the clerks that he wasn't mailing real guns or firearms; he was mailing "airsoft parts," which he repeatedly described as "parts for paint ball guns."

## IV. DISPUTED FACTS

"At sentencing, a defendant in a jointly undertaken criminal activity is liable for the harm resulting from acts directly attributable to him and for the harm resulting from the reasonably foreseeable acts of others taken in furtherance of the jointly undertaken criminal activity." *United States v. Pizarro-Berrios*, 448 F.3d 1, 6 (1st Cir. 2006) (citing U.S.S.G. § 1B1.3(a)(1), (3)). Maricola asks the Court to disregard the reasonably foreseeable consequences of his own actions and that of his conspirator, and how the parts the defendant illegally shipped overseas were used. Indeed, Maricola asks this Court to even ignore the fact that Laatikanien, the person with whom Maricola had conspired for almost one and half years, had sold Maricola's gun parts to criminal organizations in Finland, including the Cannonballs Outlaw Motorcycle Gang. This conduct is reasonably foreseeable as Maricola knew Laatikanien would not be keeping the hundreds of gun parts Maricola was supplying to him. To the contrary, as Maricola acknowledges in his objections to the PSR, Laatikanien told Maricola that he (Laatikanien) owned a gun store in Finland. Therefore, it was reasonably foreseeable that the gun parts would be sold to person who, like Maricola and Laatikanien, did not wish to comply with the government's laws and regulations. Consequently, Maricola should be held responsible for the shootings that resulted from these illegal sales of firearms. *See United States v. Rojas-Mendoza*, 456 Fed.Appx. 477, 480 (5th Cir. 2012) (affirming district court's finding that serious bodily injury to aliens being illegally transported was reasonably foreseeable despite defendant's claim that his conspirator's dangerous and evasive driving maneuvers were reckless and unforeseeable); *United States v. Fortier*, 242 F.3d 1224, 1232-33 (10th Cir. 2001) (endorsing increased sentence for defendant who sold guns for McVeigh and Nichols because it was reasonably foreseeable that the proceeds of this sale -- $2000 -- "had the capacity to further the

6

bombing of the Murrah Federal Building"); *United States v. Chavis*, 296 F.3d 450, 464 (6th Cir. 2002) (purchase of two handguns was reasonably foreseeable where the defendant and his conspirator jointly caused a third person to make false statements to a federally licensed firearms dealer); *see also United States v. Ali*, 444 F.3d 34, 38-39 (1st Cir. 2006) (intended loss for theft of credit cards was the full credit limit of each stolen credit card because such a loss "naturally and probably flows from" the unlawful conduct).

Accordingly, the harm caused from the use of the illegally exported firearm components in Finland is a reasonably foreseeable consequence of the defendant's criminal conspiracy that should be considered as relevant conduct here. *See* U.S.S.G. § 1B1.3.

## V.     ADVISORY GUIDELINE CALCULATIONS

As indicated in the plea agreement and consistent with the probation's calculations (See PSR at ¶ 46), the parties agree that the base offense level is 26 pursuant to U.S.S.G. § 2M5.2(a)(1), which is increased by two levels because the defendant was convicted of money laundering, 18 U.S.C. § 1956. *See* PSR at ¶ 47; U.S.S.G. § 2S1.1(b)(2)(B). Because the defendant pled guilty and has accepted responsibility, his offense level is reduced by three levels for a total offense level of **25 (57-71 months)**.

## VI.    FACTORS TO BE CONSIDERED UNDER 18 U.S.C. § 3553(a)

### A.    Deterrence of Criminal Conduct

The illegal export of firearm and firearm parts is very serious crime as reflected by the Guidelines' assessment of a base offense level of 26. The illegal export of weapons (like those involved in this case) is "harmful and has the potential to be harmful to a security or foreign policy of the United States." *See* U.S.S.G. § 2M5.2 app. note 1. Among the most important functions served by sentencing this defendant is the deterrent message the sentence will convey

7

to those who might consider violating our export laws and shipping parts obtained from a U.S. supplier or the internet to a foreign person for a profit. *See United States v. Flores-Machicote*, 706 F.3d 16, 23 (1st Cir. 2013) ("Deterrence is widely recognized as an important factor in the sentencing calculus.") (*citing* 18 U.S.C. § 3553(a)(2)(B)). Deterrence is "particularly important in the area of white collar crime." *United States v. Prosperi,* 686 F.3d 32, 47 (1st Cir. 2012) (citations omitted). Illegal export activity has the potential of putting weapons in the hands of criminals and terrorists and endangering our national security, public safety, and foreign policy.

**B.     Nature and Circumstances of the Offense**

The details of the defendant's conduct contained in the PSR demonstrate the seriousness of his offenses. This was not an isolated incident. Rather, it involved extensive planning and coordination with foreign persons, and lying to postal clerks and falsely completing customs forms multiple times per week for a period of eighteen months. Additionally, the defendant illegally exported hundreds of assault rifle and firearm parts worth more than $100,000. Indeed, Laatikanien alone paid Maricola $108,818.35 for his illegal exports to Finland. These factors would justify an upward departure (*see* application note 2 to U.S.S.G. § 2M5.2) but due to the defendant's guilty plea and prior cooperation, the government is seeking a sentence within the low-end of level 25.

**C.     History and Characteristics of the Defendant**

The defendant's motivation in committing these crimes was greed and the government did not uncover any evidence that he intended to engage in, or assist in committing, violent activities. Additionally, for a period of approximately two months after the authorities executed a search warrant at his residence, Maricola cooperated in a limited capacity with Special Agents of Homeland Security Investigations and Defense Criminal Investigative Service by forwarding

e-mails from foreign customers to the agents.  The special agents, however, never instructed Maricola to send the e-mail detailed in ¶ 31 of the PSR.  To the contrary, the special agents had requested the defendant not to alert his customers he had gotten caught so that the agents could potentially identify any new illegal transactions or targets.

**D.** **Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law, to Provide Just Punishment for the Offense**

For the reasons already discussed, the defendant's crimes were serious and warrant a significant sentence of imprisonment.  Incarceration for 57 months years will reflect the seriousness of the offense and promote respect for the law, while recognizing that the defendant accepted responsibility for his crimes.  Additionally, there is a least a moderate risk of recividism here.  Notwithstanding the seriousness of the defendant's crimes and the need for a sentence that provides general deterrence and promotes respect for the law, the government believes a sentence of 57 months is reasonable.

## CONCLUSION

For the foregoing reasons and the facts detailed in the PSR, the Court should sentence the defendant to term of imprisonment for a period of 57 months.  As a result of the defendant's illegal activities, hundreds of inherently dangerous and potentially lethal firearm parts were illegally exported to unlicensed and unregistered foreign persons who can use, and have used, these weapons to engage in criminal activities.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By: */s/ B. Stephanie Siegmann*
B. STEPHANIE SIEGMANN
Assistant U.S. Attorney

<u>Certificate of Service</u>

  I do hereby certify that a copy of foregoing was served upon the counsel of record for the defendant by electronic notice on this 12th day of August 2016.

          */s/ B. Stephanie Siegmann*
          B. Stephanie Siegmann